IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WANDA T. THOMPSON       :

                     :

      v.                 : Civil Action No. DKC 2006-0379

                     :

BENEFICIAL MORTGAGE COMPANY
    OF MARYLAND, ET AL.       :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this action are: (1) a motion by SunTrust Bank ("SunTrust") to dismiss counts II and V for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for a more definite statement pursuant to Fed.R.Civ.P. 12(e) (paper 10); (2) a motion by Lendmark Financial Services, Inc. ("Lendmark") to dismiss for failure to state a claim (paper 12); (3) a motion by Provident Bank of Maryland ("Provident") to dismiss counts I, II, and X for failure to state a claim (paper 18); (4) a motion by HSBC[1] to dismiss counts I, II, and X for failure to state a claim (paper 50); (5) a motion by Beneficial Mortgage Company of Maryland ("Beneficial") to dismiss counts I, II, and X for failure to state a claim (paper 52), and (6) a motion by Plaintiff for entry of default against Martha Lawson (paper 56). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule

---

[1] Defendant HSBC was formerly known as Household Credit Services, Inc., and traded as Orchard Bank during the events in question. (Paper 50).

105.6.  For the reasons that follow, the motions to dismiss will be granted, albeit with leave to amend in part.  Although Martha Lawson appears to be in default, the motion for entry of default will be denied because the current complaint does not state a claim against her.

## I.  Background

Plaintiff Wanda T. Thompson alleges the following facts.  In July or August 2005, Defendant Martha Ann Lawson stole Plaintiff's identity and mutilated Plaintiff's driver's license.  Thereafter, Lawson engaged in a series of financial transactions with the other Defendants, all of whom are financial service providers.

Plaintiff alleges that Lawson entered into a loan agreement with Beneficial, and that Beneficial reported the existence and status of this loan to credit reporting agencies in connection with Plaintiff's name and social security number.  Similarly, HSBC granted a credit card account to Lawson in the name of Plaintiff, which HSBC then reported to credit reporting agencies as belonging to Plaintiff.  Plaintiff alleges that SunTrust allowed Lawson "free and unfettered access to the funds and account of Plaintiff," despite the fact that the driver's license presented by Lawson was mutilated and Lawson's signature did not match Plaintiff's signature on file with the bank.  (Paper 2, ¶ 15).  Plaintiff alleges that Provident entered into a transaction with Lawson, the result of which was the placement of an encumbrance upon the home

of Plaintiff in excess of $100,000, and that Provident reported this transaction on Plaintiff's credit history. Finally, Plaintiff claims that Lendmark granted Lawson a loan in Plaintiff's name, encumbered the title to vehicles owned by Plaintiff without her consent or knowledge, and reported the transaction on Plaintiff's credit history.[2]

Plaintiff filed this action in the Circuit Court for Prince George's County, Maryland, on January 11, 2006, and the action was removed to this court on February 13, 2006, on the basis of federal question jurisdiction.[3] (Paper 1). Plaintiff's complaint alleges the following claims: (1) negligence against all Defendants (count I); (2) civil conspiracy against all Defendants (count II); (3) gross negligence against Beneficial (count III), HSBC (count IV), SunTrust (count V), Provident (count VI), and Lendmark (count VII);

---

[2] Plaintiff also names Capital One and Wells Fargo Bank as defendants in her complaint. Capital One subsequently has been dismissed from this action. (Paper 60). The complaint does not explain the role of Wells Fargo in the factual section of the complaint. In Count IX, Plaintiff alleges that Wells Fargo issued a credit card to Ms. Lawson in Plaintiff's name, allowed Lawson to make charges, and reported the credit history to various credit reporting agencies. A return of service has been filed, but Wells Fargo has not appeared and Plaintiff has not sought entry of default.

[3] In a recorded conference call with the parties who had appeared in this court, the court raised a question concerning compliance with the unanimity rule in 28 U.S.C. § 1446 and required the parties to submit a status report. (Paper 47). In that status report, the parties agree that the unanimity requirement is procedural, does not affect subject matter jurisdiction, and contains an exception for parties in default. (Paper 57). No party has objected to removal or moved to remand the case.

and (4) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., against all Defendants (count X).[4]

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in

---

[4] Plaintiff does not label Counts III through VII of the complaint; the counts refer to varying conduct on the part of Defendants.  In her opposition memorandum (paper 20), Plaintiff refers to these counts as gross negligence claims and the court will construe the claims accordingly.

Counts VIII and IX of the complaint allege gross negligence and various statutory violations against both Capital One and Wells Fargo.  As noted, Capital One has been dismissed from this action. The claims against Wells Fargo are not directly under consideration, but are subject to the same analysis.

the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

### A. Negligence

In count I of the complaint, Plaintiff asserts that all Defendants acted negligently under Maryland law when they provided financial services to Lawson in Plaintiff's name. Lendmark, Provident, HSBC, and Beneficial have moved to dismiss the negligence count for failure to state a claim. To state a claim for negligence under Maryland law, Plaintiff must allege facts in support of the following four elements: (1) a duty owed to Plaintiff (or to a class of which Plaintiff is a part) by Defendants, (2) "a breach of that duty," (3) a "legally cognizable causal relationship between the breach of duty and the harm

suffered," and (4) damages.  *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 531 (1986).

The existence of a legal duty is a threshold question of law to be decided by the court, *Patton v. U.S.A. Rugby Football*, 381 Md. 627, 636 (2004), and therefore is an "appropriate issue to be disposed of on motion for dismissal," *Bobo v. State*, 346 Md. 706, 716 (1997).  A legal duty is "some specific relation between the plaintiff and the defendant, without which there could be no liability."  *Jacques*, 307 Md. at 532.

A legal duty can be created in three ways under Maryland law: (1) by statute or rule, *see McCray v. Maryland*, 456 F.2d 1, 6 (4th Cir. 1972); (2) by contractual or other private relationship; or (3) "indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party," *Bobo*, 346 Md. at 715.  Of relevance here, and discussed separately below, are the first and third categories of legal duties; Plaintiff's negligence claims against Lendmark and Provident are premised on a duty arising from statute, whereas her claims against HSBC and Beneficial are based on a duty arising from an implied special relationship between the parties.[5]

---

[5] Plaintiff alleges that she was a SunTrust customer and, thus, her relationship with SunTrust falls into the second category of contractual legal duties.  SunTrust has not moved to dismiss count I.

1.    **Statutory Duty—Lendmark and Provident**

Plaintiff bases her negligence claim against Lendmark and Provident on a duty that she claims arises from various statutory provisions in Title 13 of the Maryland Transportation article.[6] First, Plaintiff claims that § 13-111, Md. Code Ann., Transp., imposes a statutory duty on Defendants Lendmark and Provident. Section 13-111 states that if a certificate of vehicle title is lost, stolen, or damaged, "the owner or the legal representative of the owner named in the certificate, as shown by the records of the [Motor Vehicle] Administration, promptly shall apply for and, after furnishing information satisfactory to the Administration and payment of the required fee, obtain a duplicate certificate of title."  Md. Code. Ann., Transp. § 13-111.

In addition, Plaintiff argues that a statutory duty is created by § 13-202 and § 13-203, which set forth the procedures for perfecting a security interest in a vehicle.  Section 13-202 states, in pertinent part:

> (a) Unless excepted by § 13-201 of this subtitle, a
> security interest in a vehicle is not valid against any
> creditor of the owner or any subsequent transferee or
> secured party unless the security interest is perfected
> as provided in this subtitle.
>
> (b)(1) A security interest is perfected by:

---

[6] Although Plaintiff alleges in the complaint that Provident's conduct involved real estate and related financing, (paper 2, ¶ 16), Plaintiff argues in her opposition memorandum that Provident owed her a legal duty arising from the Transportation Article, (paper 32).

> (i) Delivery to the Administration of every existing certificate of title of the vehicle and application for certificate of title on the form and containing the information about the security interest that the Administration requires; and
>
> (ii) Payment of a filing fee established by the Administration, which is in addition to any other fees that apply under the Maryland Vehicle Law.

Md. Code Ann., Transp. §§ 13-202(a)-(b). Section 13-203 applies to perfection of a security interest by an owner, stating in relevant part:

> (b) The owner immediately shall execute the application in the space provided for this purpose on the certificate of title or on the separate form that the Administration otherwise requires, naming the secured party on the certificate of title and showing the name and address of the secured party, the amount of the security interest, and the date of his security agreement.
>
> (c) The owner immediately shall deliver the certificate of title and application to the Administration.

Md. Code Ann., Transp. §§ 13-203(b)-(c).

To state a claim for negligence based on a breach of a statutory duty, Plaintiff must allege facts sufficient to show: "(a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of." *Polakoff v. Turner*, 385 Md. 467, 483 (2005) (quoting *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 79 (2003)). In a statutory-based negligence action, "proximate cause is established by determining whether the plaintiff is within the class of persons

8

sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent." *Brooks*, 378 Md. at 79; *Bentley v. Carroll*, 355 Md. 312, 327 (1999) (holding that a plaintiff's injury must be "the very evil against which the legislation was intended to protect"). Thus, the statute must "set forth mandatory acts clearly for the protection of a *particular class* of persons rather than the public as a whole." *Ashburn v. Anne Arundel County*, 306 Md. 617, 635 (1986).

The statutory provisions cited by Plaintiff in this case address "many things," none of which include "any specific mention of a duty placed upon" the Defendants. *Remsburg v. Montgomery*, 376 Md. 568, 585 (2003). First, Plaintiff's reliance on § 13-111 is misplaced because, to the extent that the section creates legal duties at all, they are only placed on "the owner or the legal representative of the owner" of the vehicle. Md. Code. Ann., Transp. § 13-111. Plaintiff does not allege that either Lendmark or Provident is the owner or legal representative of the owner of Plaintiff's vehicle, and thus the statute does not regulate their conduct in this situation. Second, nothing suggests that this section was intended by the legislature to prevent the harm alleged here, i.e., identity theft. Rather, the clear purpose of the statute is to ensure that vehicle owners have adequate title records in their possession. To the extent that the statute was

not intended to prevent the harm alleged by Plaintiff, it provides an insufficient basis for creation of a legal duty.

Plaintiff's reference to § 13-202 and § 13-203 of the Transportation Article is equally misplaced because these provisions merely set forth the "ground rules" for "perfecting a security interest in motor vehicles." *Honda City Triumph, Inc. v. First Nat'l Bank of S. Md.*, 52 Md.App. 540, 545 (1982). The legislative design behind the statutory scheme embodied in § 13-202 and § 13-203 was that: "(1) the [Motor Vehicle Administration] would be a central repository for all liens on motor vehicles registered in Maryland, and (2) the primary source of notice of the secured party's interest in the vehicle would be the certificate of title itself, rather than an index or books kept in the county courthouse." *Honda City Triumph*, 52 Md.App. at 545-46. Thus, the procedures outlined in § 13-202 and § 13-203 are intended to promote ease of administration and to protect security interests in vehicles, and there is no indication that these statutes were designed to prevent identity theft. Nor has Plaintiff shown that she is a member of a class meant to be protected by these statutes. Moreover, to the extent that these statutory provisions impose "certain specific duties," the duties are imposed on vehicle *dealers* and *owners*, leaving lenders and banks, such as Lendmark and Provident, entirely dependent on the conduct of these other parties. *Honda City Triumph*, 52 Md.App. 545-46.

10

Another significant limitation on any alleged duty arising out of the Transportation Article comes from the text of the statute itself, which explains that "the violation of any provision of the Maryland Vehicle Law does not give any right of action to any person who would not be entitled to it in the absence of the provision."  Md. Code Ann., Transp. § 11-205(a)(2).

Because Plaintiff has failed to allege facts in support of any legal duty owed to her by Lendmark and Provident, her negligence claim against those Defendants fails to state a proper claim for relief.  Accordingly, Lendmark and Provident's motions will be granted with respect to count I.

## 2.  Duty Implied From Special Relationship–HSBC and Beneficial

Plaintiff's negligence claim against HSBC and Beneficial apparently is premised on duties arising out of common law based on a special relationship between the parties.[7]  Pursuant to Maryland law, a "special relationship" between the parties can be established by either: "(1) the inherent nature of the relationship between the parties; or (2) by one party undertaking to protect or

---

[7] Plaintiff points to statutes regarding the duties that financial institutions owe to their customers in her memorandum in opposition to SunTrust's motion to dismiss. (Paper 30).  Although Plaintiff alleges that she was a SunTrust customer, (paper 2, ¶ 49), she does not assert that she was a customer of either HSBC or Beneficial, or that these institutions owe her a duty arising from a statute.  Moreover, Plaintiff does not assert that any duty owed by HSBC or Beneficial arises from a contractual obligation.  Thus, any duty owed to Plaintiff by HSBC and Beneficial must emanate from a special relationship as defined by common law.

assist the other party, and thus often inducing reliance upon the conduct of the acting party." *Patton*, 381 Md. at 639.   In determining whether a "tort duty" exists, Maryland courts consider "the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques*, 307 Md. at 534.   Courts distinguish between the risk of economic harm and the risk of personal injury, and where "the risk created by negligent conduct is no greater than one of economic loss, generally no tort duty will be found absent" a showing of an "intimate nexus" between the parties. *Id.* at 537.   To satisfy this intimate nexus, a party must demonstrate "contractual privity or its equivalent." *Id.* at 535.   Thus, in cases of pure economic harm, such as the instant case, courts must  "examine carefully the relationship that existed between [the] parties." *Id.*

The Court of Appeals of Maryland has not yet had occasion to discuss the duties that financial institutions owe to noncustomers in extending financial services to third parties.   Yet, "every court that has examined the issue has answered that banks owe no duty of care to noncustomers," because no relationship exists between the bank and a noncustomer. *Smith v. Amsouth Bank, Inc.*, 892 So.2d 905, 909 n.2 (Ala. 2004) (collecting cases).   The United States Court of Appeals for the Fourth Circuit recently addressed this issue within the context of North Carolina law and reached the same conclusion. *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220,

227 (4th Cir. 2002) (noting that "numerous jurisdictions" have refused to recognize a duty of care owed to noncustomers).  The court explained that other courts have reached the same conclusion "even when the noncustomer is the person in whose name an account was fraudulently opened." *Eisenberg*, 301 F.3d at 226.; *see also Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F.Supp.2d 339, 345 (D.Md. 2003) (applying Maryland law and citing *Eisenberg*, 301 F.3d at 220, to find there is no common-law duty owed to noncustomers). In addition, the Supreme Court of South Carolina recently considered the issue and held that "the relationship, if any, between credit card issuers and potential victims of identity theft is far too attenuated to rise to the level of a duty between them." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 334 (2003).

In addition, Maryland "has resisted the establishment of duties of care to indeterminate classes of people." *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 420 (2005).  This resistance stems from the concern "that a person ordinarily cannot foresee liability to a boundless category of people," and because such an expansion of duties would "make tort law unmanageable." *Id.* at 421.  To hold that financial institutions have a legal duty of care toward all noncustomers impermissibly would expand those institutions' duties to an indeterminate class of people.  *See Valentine v. On Target, Inc.*, 353 Md. 544, 553 (1999) (refusing to find a duty owed to "an indeterminate class of people, known and

13

unknown"); *Eisenberg*, 301 F.3d at 226 (finding that extending a duty of care to noncustomers would expose banks to unlimited liability for unforeseeable frauds). Because the existence of a legal duty is required to state a proper negligence claim, HSBC and Beneficial's motion to dismiss count I will be granted.[8]

## B.   Gross Negligence

In separate counts against each of the individual Defendants, Plaintiff asserts that Defendants acted with gross negligence when they extended financial services to Lawson in Plaintiff's name. SunTrust and Lendmark have moved to dismiss Plaintiff's gross negligence claim against them contained in counts V and VII, respectively. The tort of gross negligence under Maryland law bears a closer resemblance to an intentional tort than to negligence. Gross negligence is:

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Marriot Corp. v. Chesapeake & Potomac Tel. Co. of Md.*, 124 Md.App. 463, 478 (1998) (citing *Romanesk v. Rose*, 248 Md. 420, 423 (1968)).

---

[8] To the extent that Plaintiff's negligence claim against Provident is based on a duty arising from a special relationship between the parties rather than from statute, it is likewise without merit because Plaintiff does not allege that she was a Provident customer.

To plead gross negligence properly, a plaintiff must allege "*facts* showing that [the defendant] acted with a wanton reckless disregard for [the plaintiff]." *Boyer v. State*, 323 Md. 558, 579 (1991). Gross negligence is "the omission of that care which even inattentive and thoughtless men never fail to take of their own property, it is a violation of good faith. It implies malice and evil intention." *Taylor v. Harford County Dep't of Soc. Servs.*, 384 Md. 213, 228 (2004). A court may determine as a matter of law that the facts are insufficient to establish that Defendants' conduct was grossly negligent. *See Marriot Corp.*, 124 Md.App. at 478. Like negligence, a proper claim for gross negligence requires the existence of a legal duty. *Marriot Corp.*, 124 Md.App. at 478.

With respect to SunTrust, Plaintiff has failed to allege facts sufficient to show that SunTrust acted with the malice and evil intention that is required to state a claim of gross negligence. Plaintiff alleges in count V that SunTrust failed to obtain appropriate identification from Lawson, failed to compare Lawson's forged signature with a signature card, and failed to recognize "unusual account activities" with the Bank.[9] (Paper 2, ¶ 55). However, there are no facts alleged in the complaint showing that

_____

[9] Although SunTrust argues in a footnote to its motion to dismiss that Plaintiff fails to allege facts in support of the elements of negligence, (paper 11), the court notes that SunTrust did not move to dismiss count I in its motion, (paper 10), and the court will not construe the footnote in SunTrust's memorandum as doing so.

SunTrust intended to harm Plaintiff or disregarded her rights in a manner constituting malice.   Although Plaintiff states that SunTrust's "actions were of such a willful and wanton nature and were in such reckless and indifferent disregard of the rights of the Plaintiff, Thompson, so as to amount to gross negligence and/or intentional actions designed solely to injure or damage its depositor." (Paper 2, ¶ 57), these allegations are conclusory, and as such, are insufficient to survive a motion to dismiss.

Furthermore, to the extent that Plaintiff fails to allege facts sufficient to demonstrate any cognizable legal duty owed by other defendants, like Lendmark, towards her, as discussed above, her claim for gross negligence also fails.[10]   *Rassa v. Rollins Protective Servs. Co.*, 30 F.Supp.2d 538, 540-41 (D.Md. 1998) (requiring existence of legal duty to state a gross negligence claim under Maryland law).   Although Beneficial, HSBC, and Provident have not moved to dismiss the gross negligence counts against them, these counts will be dismissed *sua sponte* by the court.   *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th

---

[10] In addition, Plaintiff has failed to allege facts sufficient to show that Lendmark acted with malice or evil intention towards her.   Plaintiff merely alleges that Lendmark provided financial benefits to Lawson, placed a lien on an automobile owned by Plaintiff without Plaintiff's consent or knowledge, and then refused to stop encumbering the title to the vehicle.   Plaintiff states that Lendmark thus acted wantonly, wilfully, and in reckless disregard of Plaintiff's rights in a manner constituting gross negligence.   This conclusory allegation is insufficient to survive a motion to dismiss.

Cir. 2006) ("Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it."); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2nd Cir. 1994) (holding that the court has the power to dismiss a complaint *sua sponte* for failure to state a claim provided the plaintiff had notice and an opportunity to be heard). Because these Defendants disputed the existence of any legal duty owed by them to Plaintiff in count I, and the issue has been litigated with respect to that count, Plaintiff has not been deprived of any opportunity to litigate this claim.

Accordingly, the gross negligence claims asserted by Plaintiff against Beneficial, HSBC, SunTrust, Provident, and Lendmark in counts III, IV, V, VI, and VII, respectively, will be dismissed for failure to state a claim.

## C.   Civil Conspiracy

In count II of the complaint, Plaintiff alleges that all of the Defendants engaged in a civil conspiracy under Maryland law when they "in concert and in active participation" with Lawson, "conspire[d] to cheat and/or defraud the Plaintiff, Thompson." (Paper 2, ¶ 26).  SunTrust, Lendmark, Provident, HSBC, and Beneficial all have moved to dismiss the conspiracy count for failure to state a claim.  A civil conspiracy under Maryland law is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful

means to accomplish an act not in itself illegal with the further requirement that the act or the means employed must result in damages to the plaintiff." *Yousef v. Trustbank Sav., F.S.B.*, 81 Md.App. 527, 538 (1990).   Thus, a "meeting of the minds in an unlawful arrangement" is essential to stating a claim for conspiracy.   *Christian v. Minn. Mining & Mfg. Co.*, 126 F.Supp.2d 951, 959 (D.Md. 2001) (quoting *Elecs. Store, Inc. v. Cellco P'ship*, 127 Md.App. 385, 409 (1999)).

Civil conspiracy under Maryland law is "not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 645 n.8 (1994).   Thus, "a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action.   The damage done is the gist of the action, not the conspiracy." *Id.* (quoting *Robertson v. Parks*, 76 Md. 118, 135 (1892)).   In short, "civil conspiracy is a parasite tort--it cannot stand alone." *Kramer v. Mayor & City Council of Baltimore*, 124 Md.App. 616, 642 (1999).

As noted above, Plaintiff's complaint lacks any factual allegations to support her gross negligence claim against SunTrust, Lendmark, Provident, HSBC, and Beneficial.   Thus, Plaintiff's civil conspiracy claim may not rest upon that tort.   Plaintiff does allege in the complaint that Defendants conspired to "defraud" her.

(Paper 2, ¶ 27).  Yet, there is no fraud count in the complaint, and, more importantly, Plaintiff does not allege facts in support of a fraud claim.[11]

Because Plaintiff does not allege facts in support of a fraud claim and her gross negligence claim is without merit, the civil conspiracy count cannot rest upon those tortious acts.  Thus, the only remaining portion of the complaint upon which Plaintiff's civil conspiracy claim might rest is negligence.  A "conspiracy to commit negligence," however, would not satisfy the elements of conspiracy under Maryland law, which requires a "meeting of the minds in an unlawful arrangement."[12]  *Christian*, 126 F.Supp.2d at 959.  Courts agree that both negligent participation in a

---

[11] The circumstances constituting fraud must be plead with particularity.  Fed.R.Civ.P. 9(b).  To state a fraud claim under Maryland law, a plaintiff must allege facts in support of the following elements:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 195 (1995).

[12] As noted, Plaintiff's negligence claim is without merit with respect to Lendmark, Provident, HSBC, and Beneficial.  Thus, even if Plaintiff could state a civil conspiracy claim based on negligence, it would fail with respect to those Defendants.

conspiracy and a conspiracy to commit negligence are legally impossible. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1997) ("One cannot agree or conspire to be negligent."); *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 64 (Ill. 1994) ("There is no such thing as accidental, inadvertent, or negligent participation in a conspiracy."). Thus, even assuming that Defendants negligently enabled Lawson to commit fraud against Plaintiff or to steal her identity, such conduct would not provide the basis for a civil conspiracy claim because negligent acts are, by definition, not performed intentionally. Thus, the motions of SunTrust, Lendmark, Provident, Household, and HSBC to dismiss count II of the complaint will be granted.

## D.    **FCRA Violations**

In the complaint, in support of her FCRA claim (count X) against all Defendants, Plaintiff alleges that "each of Defendants has falsely reported information to credit bureaus which has appeared upon Plaintiff's credit report," and that Defendants failed to remove such information despite being notified of the inaccuracies by Plaintiff. (Paper 2, ¶ 98). Defendants Lendmark, Provident, HSBC, and Beneficial have moved to dismiss count X for failure to state a claim.[13]

---

[13] Neither SunTrust nor Wells Fargo challenge the FCRA claim in count X.

Plaintiff's complaint does not point to specific FCRA provisions on which her claim is based.  Rather, Plaintiff states only that Defendants' acts were "in violation of the statutorily imposed obligations." (Paper 2, ¶ 100).  Plaintiff's opposition memoranda make several references to 15 U.S.C. § 1681s-2(a), which is one of the statutes governing the responsibilities of entities that furnish information to consumer reporting agencies.  Section 1681s-2(a) sets forth the duties for furnishers of information who have received notice of consumer identity theft, 15 U.S.C. § 1681s-2(a)(6)(B).  In addition, subsection (a) provides that information furnishers shall provide consumers with the results of their investigations after receiving notice of a information dispute from a consumer.  15 U.S.C. § 1681s-2(a)(8)(E).  Section 1681s-2(d) of the FCRA states, however, that the protections outlined in § 1681s-2(a) "shall be enforced exclusively as provided under section 1681s of this title *by the Federal agencies and officials and the State officials* identified in section 1681s of this title."  15 U.S.C. § 1681s-2(d) (emphasis added).  Thus, there is no private right of action for violations of § 1681s-2(a).  *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 782-83 (W.D.Ky. 2003) (collecting cases).

Plaintiff also cites § 1681s-2(b) of the FCRA in her opposition memoranda.  As to this section, there is "abundant authority in support of the recognition of a private right of action under § 1681s-2(b)." *Akalwadi v. Risk Mgmt. Alternatives,*

*Inc.*, 336 F.Supp.2d 492, 509-510 (D.Md. 2004) (collecting cases).

Section 1681s-2(b) states, in relevant part:

> *After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute* with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
>> (a) conduct an investigation with respect to the disputed information;
>>
>> (b) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>>
>> (c) report the results of the investigation to the consumer reporting agency;
>>
>> (d) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>>
>> (e) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly-
>>> (i) modify that item of information;
>>> (ii) delete that item of information; or
>>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b) (emphasis added).

The duties placed on information furnishers by § 1681s-2(b) do not arise until an information furnisher receives notice "pursuant to section 1681i(a)(2)" of the FCRA, which sets forth the procedures by which *consumer reporting agencies* must notify

information furnishers of disputes.[14]   15 U.S.C. §§ 1681i(a)(2)(A)-(B).   Thus, an information furnisher that has received notice of a dispute from a *consumer* has no duties under § 1681s-2(b).   *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002); *Stafford*, 262 F.Supp.2d at 784.   Rather, notice from a consumer reporting agency is "necessary to trigger the furnisher's duties under section 1681s-2(b)." *Id.; see Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 429 (4th Cir. 2004).

Plaintiff's complaint fails to allege that she properly notified any consumer reporting agency of the disputed information on her credit report.   Similarly, the complaint fails to allege that a consumer reporting agency subsequently notified any of the Defendant information furnishers of Plaintiff's dispute.   Plaintiff has attached a document to her opposition memoranda indicating that a consumer reporting agency, Trans Union, conducted an investigation of Plaintiff's dispute.   (Papers 14, 32, Ex. E).   However, Plaintiff neither references nor incorporates this document in the complaint and it is irrelevant to the court's determination of the motions to dismiss, except to the extent that

---

[14] "Consumer reporting agencies" are defined in the FCRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports."   15 U.S.C. § 1681a(f).

it may reflect on her ability to amend the complaint so as to state a claim.[15]

Accordingly, Plaintiff's FCRA claims against Lendmark, Provident, HSBC, and Beneficial will be dismissed. Although SunTrust has not moved to dismiss the FCRA claim asserted against it in count X, that claim will be dismissed as well because it suffers from the same defect as it does with respect to the other Defendants. However, because the document pertaining to Trans Union's investigation indicates that there may be a potential factual basis for an FCRA claim pursuant to § 1681s-2(b), Plaintiff will be given leave to amend her complaint with regard to the FCRA claim.

## IV. Default

According to the affidavit of service, Plaintiff personally served Ms. Lawson on January 13, 2006, while this case was pending in the Circuit Court. No answer or other response has been filed either before or after removal. Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not. *SEC v. Lawbaugh*,

---

[15] In her opposition memoranda, Plaintiff also points to 15 U.S.C. § 1681i, which governs the duties of consumer reporting agencies upon notice of a dispute regarding the accuracy of credit information. Section 1681i is not applicable in the instant case because Plaintiff has not alleged that any of the Defendants are "consumer reporting agencies" as defined in the statute, nor do Defendants fit within the statutory definition of such entities. *See Jarrett v. Bank of America*, 421 F.Supp.2d 1350, 1353 (D.Kan. 2006).

359 F.Supp.2d 418, 422 (D.Md. 2005) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  Plaintiff's complaint appears to name Ms. Lawson in Count I for negligence, Count II for civil conspiracy, and Count X for violation of the Fair Credit Reporting Act.  The complaint is, however, deficient as discussed above regarding the allegations for all of these claims, and while the facts might indicate some basis for civil liability against Ms. Lawson, the complaint is unclear. Plaintiff has not identified the duty owed by Ms. Lawson, or the breach, and thus has not alleged a claim for negligence.  Nor is Ms. Lawson alleged to be a financial service provider, and thus she could not violate the Fair Credit Reporting Act.  Without a viable tort, there can be no civil conspiracy.  Thus, there would be no point in entering a default against Ms. Lawson on the present complaint and Plaintiff's motion will be denied.  Indeed, Plaintiff will be directed to show cause why the complaint should not be dismissed against Ms. Lawson.

**V.   Conclusion**

For the foregoing reasons, Defendants' motions will be granted.  Plaintiff will be given fifteen days within which to file an Amended Complaint concerning the FCRA violations asserted in count X against Lendmark, Provident, HSBC, Beneficial, and SunTrust.  If Plaintiff intends to pursue claims against Wells Fargo, it would be prudent to amend the complaint as to that defendant as well.  Plaintiff's motion for entry of default against

Ms. Lawson will be denied, and Plaintiff will be directed to show cause why the complaint should not be dismissed as to her.   If Plaintiff seeks to amend the complaint against Ms. Lawson, or against Wells Fargo, both of whom appear to be in default, the amended complaint must be served on them in the manner provided for service of a summons in Rule 4.   See, Fed.R.Civ.P. 5 (a).   A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge