IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| WANDA T. THOMPSON | : |
|  | : |
| v. | : Civil Action No. DKC 2006-0379 |
|  | : |
| BENEFICIAL MORTGAGE COMPANY<br>    OF MARYLAND, ET AL. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is the motion of Plaintiff, Wanda T. Thompson, for reconsideration of the court's July 18, 2006 Order (paper 63).  Also pending are motions by Plaintiff to file a "Revised Amended Complaint" (paper 71) and a "Final Amended Complaint" (paper 79).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court will deny Plaintiff's motion for reconsideration and her motions for leave to file amended complaints.  Plaintiff will be directed to file an amended complaint (clean copy and redline version) to clarify the status of her federal claim.  If no federal claim remains, the parties will be directed to show cause why the case should not be remanded.  In addition, Plaintiff will again be directed to show cause why the complaint should not be dismissed as to Martha Lawson.

## I.  Background

Plaintiff alleges that Defendant Martha Ann Lawson assumed Plaintiff's identity and, while posing as Plaintiff, engaged in transactions with various financial institutions in which Ms. Lawson removed funds from Plaintiff's accounts, took out loans in Plaintiff's name, and consented to the placement of encumbrances on Plaintiff's real and personal property as security for those loans. The facts of the case are set forth more fully in the July 18, 2006 Memorandum Opinion (paper 61, at 2-3) and need not be repeated.

The July 18, 2006 Order, of which Plaintiff seeks partial reconsideration, directed Plaintiff "to file an amended complaint as to the FCRA claim in count X of the complaint" within fifteen days of that Order.  Plaintiff filed a redline copy of an amended complaint on August 3, 2006, and a clean copy on August 4. Recognizing that the amended complaint "contained inaccuracies and contained deletions that were inadvertently not made" (paper 71, at 2), Plaintiff filed a proposed revised amended complaint on August 9, 2006 (papers 69 & 70), along with a motion to file the revised amended complaint (paper 71), on August 16, 2006.  This motion was opposed by Lendmark.  On November 9, 2006, Plaintiff moved to file a "Final Amended Complaint" (paper 80), and this motion was also opposed by Lendmark.  Plaintiff has recently filed two supplemental papers (papers 82 and 83).

## II.  Motion for Reconsideration

Plaintiff argues that counts VI (against Lendmark) and VII (against Provident) of the original complaint should not have been dismissed.   The court dismissed both counts, reasoning that Plaintiff purported to allege gross negligence in counts III, IV, V, VI, and VII of the complaint, but had failed to state a claim of gross negligence because the complaint failed to allege a duty, cognizable under Maryland law, that Defendants owed to Plaintiff. (Paper 61, at 16-17).   Plaintiff contends that both counts VI and VII state a claim for slander of title under Maryland law, and thus should not have been dismissed.

## A.  Standard of Review

An interlocutory order, such as the Court's July 18, 2006 Order is subject to review at any time under Fed.R.Civ.P. 54(b), which provides that absent an explicit direction to the contrary,

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54 does not, however, indicate the appropriate standard of review for interlocutory orders.

> Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions.   Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2)

3

> there is additional evidence that was not
> previously available; or (3) the prior
> decision was based on clear error or would
> work manifest injustice.

*Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 566-67 (M.D.N.C.) (citing *Potter v. Potter*, 199 F.R.D. 550, 552-53 (D.Md. 2001) (listing the the same three factors)); *see also Pinney v. Nokia, Inc.*, 402 F.3d 430, 452-53 (4th Cir.) (unpublished disposition) (noting that the three factors listed in *Potter* "make sense when a district court is asked to reconsider its own order" for the reasons set forth in *Potter*), *cert. denied*, 126 S.Ct. 551, 552 (2005).  A motion for reconsideration of an interlocutory order is not generally available to make an argument that could have been presented in the first instance, for the persuasive reasons set forth in *Potter*:

> Hindsight being perfect, any lawyer can
> construct a new argument to support a position
> previously rejected by the court, especially
> once the court has spelled out its reasoning
> in an order. It is hard to imagine a less
> efficient means to expedite the resolution of
> cases than to allow the parties unlimited
> opportunities to seek the same relief simply
> by conjuring up a new reason to ask for it.

*Potter*, 199 F.R.D. at 553.

Reconsideration of an interlocutory order is also authorized under Fed.R.Civ.P. 60(b), which permits a motion for relief from a final judgment or, as in this case, an order.  A motion under Fed.R.Civ.P. 60(b) must be based on one of a list of reasons:

4

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The remedy provided by Rule 60(b) is 'extraordinary and is only to be invoked up on a showing of exceptional circumstances.'" *Johnson v. Montminy*, 289 F.Supp.2d 705, 705 (D.Md. 2003) (quoting *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979)), *aff'd*, 95 Fed. Appx. 18 (4th Cir. 2004) (unpublished disposition). "The rule 'does not authorize a motion merely for reconsideration of a legal issue,' . . . [or to advance] ' . . . new arguments or supporting facts which were otherwise available for presentation when the original . . . motion was briefed.'" *Johnson*, 289 F.Supp.2d at 705 (quoting *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

## B. Analysis

Plaintiff argues that the court erred in dismissing counts VI and VII of the complaint because dismissal of these counts was not requested and because the counts actually stated claims for slander

of title under Maryland law.  She does not challenge the court's conclusion that neither count states a claim for gross negligence under Maryland law.  Because the two counts are substantially different and different arguments were made as to each in the original briefing, they will be considered separately.

Lendmark clearly requested dismissal of Count VII of the complaint in its motion to dismiss. (Paper 12, at 7-8).  Lendmark included a separate bold text heading requesting dismissal of Count VII (*id.* at 7), and concluded this section by asserting "for the same reasons as those raised by defendant SunTrust Bank in support of dismissal of Count V of the complaint, Lendmark is entitled to dismissal of Count VII for failure to state a claim. See Paper No. 11, SunTrust Bank's supporting memorandum at 4-5, incorporated herein by reference." (*Id.* at 8).  In response to Lendmark's arguments, Plaintiff argued that she had stated a claim of negligence, as well as violations of the FCRA and civil conspiracy, but did not argue that the original complaint stated a claim for slander of title against Lendmark. (Paper 14, at 9).  Plaintiff had the opportunity to assert at that time that count VII asserted a claim of slander of title.  Because she failed to do so, she may not now present that argument as a ground for reconsideration. Such a motion is not appropriately used to advance a legal position that could have been, but was not, previously asserted. *See Akeva L.L.C.*, 385 F.Supp.2d at 566-67; *Johnson*, 289 F.Supp.2d at 705.

Unlike Lendmark, Provident never moved to dismiss count VI of the complaint.  Count VI was dismissed *sua sponte* because the court reasoned that it, like counts V and VII, attempted to state a claim for gross negligence and failed to do so because Plaintiff did not allege a legally cognizable duty owed to her by Provident.  Count VI, however, unlike Count VII, explicitly asserts that Provident's conduct amounted to slander of title.   (Paper 2, at 10-12). Because of the differences between these counts, Plaintiff was justified in not arguing the merits of the slander of title claim in count VI in response to Lendmark's arguments as to count VII. Plaintiff's motion for reconsideration will be denied, nonetheless, because count VII of the complaint fails to state a claim of slander of title under Maryland law.

The Court of Appeals of Maryland has decided relatively few slander of title cases, and acknowledges that the elements have not been succinctly listed.  *See Rite Aid Corp. v. Lake Shore Investors*, 298 Md. 611, 618 n.5 (1984); see also *Beane v. McMullen*, 265 Md. 585 (1972) (quoting a general discussion of the elements of this tort from W.L. Prosser, *Handbook of the Law of Torts*, § 129, pp. 919-22 (4th ed. 1971)).  In *Rite Aid Corp.*, the court did not explicitly list all of the elements of slander of title, but held that special damages is a vital element of the tort.  *See Rite Aid Corp.*, 298 Md. at 622-23.

> Special damages are those which result in a
> pecuniary loss directly or immediately from

> the conduct of third persons. As a general
> principle, pecuniary loss in this context
> includes that from the impairment of
> vendibility or value by the disparagement and
> the expense of measures reasonably necessary
> to counteract the publication, including
> litigation to remove the doubt cast upon
> vendibility or value by the disparagement.
> Whether other various losses qualify as
> special damages depends upon the character of
> the defamation and the evidence adduced in
> each case.

*Id.* at 625.

Plaintiff has not pled any special damages resulting from a specific instance when the alleged slander of title prevented anyone from dealing with her with respect to the property.  With regard to damages from the alleged slander of title, Plaintiff alleges only the following:

> That the continuing asserted lien upon
> the property of Plaintiff, Thompson by
> Defendant, Provident has and is continuing to
> cause damage and amounts to slander of title
> of the real property owned by Plaintiff,
> Thompson.
>
> . . . .
>
> As a direct and proximate result of the
> slander of title and, unlawful recording of a
> Deed of Trust upon the property owned by
> Plaintiff, Thompson, has sustained pecuniary
> damages in excess of Four Hundred Thousand
> ($400,000) Dollars.

(Paper 2, at 10 ¶¶ 62, 65).  Plaintiff does not allege actual facts establishing that she suffered special damages from the alleged conduct of Provident, but instead offers only a legal conclusion devoid of reference to actual events, which need not be taken as

8

true on a motion to dismiss.    See *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).   Plaintiff has therefore failed to state a claim for slander of title.

Malice is also an element of a claim for slander of title, and Plaintiff's allegations are insufficient to establish malice. *Beane*, quoting Prosser, identified three types of malice adequate to satisfy this element of slander of title:

> "There is liability when the defendant acts for a spite motive, and out of a desire to do harm for its own sake; and equally so when he acts for the purpose of doing harm to the interests of the plaintiff in a manner in which he is not privileged so to interfere. There is also liability when the defendant knows that what he says is false, regardless of whether he has an ill motive or intends to affect the plaintiff at all. The deliberate liar must take the risk that his statement will prove to be economically damaging to others; and there is something like the 'scienter' found in an action of deceit. Any of these three is sufficient to constitute 'malice' and support the action. But in the absence of any of the three there is no liability, where the defendant has made his utterance in good faith, even though he may have been negligent in failing to ascertain the facts before he made it."

*Beane*, 265 Md. at 608-09 (quoting W.L. Prosser, *Handbook of the Law of Torts*, § 129, pp. 921-22 (4th ed. 1971)).

With respect to the malice element of slander of title, Plaintiff alleges "[t]hat the failure of Defendant, Provident to take any safeguards to ensure the individual or individuals that it was doing business with, [sic] in fact Plaintiff Thompson rather

than Defendant, Lawson amounts to a willful and wanton or intentionally willful blindness to facts which were before Defendant." (Paper 2, at 10 ¶ 64).  Plaintiff does not allege that Provident intended to harm Plaintiff or Plaintiff's interests or that Defendant was aware that the information was false.  Instead, she alleges only that Provident should have been aware of its falsity, and such an allegation is insufficient to satisfy the falsity requirement of slander of title.   Plaintiff also alleges that "Provident's actions were of such a willful and wanton nature and were in such reckless and indifferent disregard of the rights of the Plaintiff, Thompson, so as to amount to gross negligence and/or intentional actions designed solely to injure or damage the Plaintiff, Thompson." (Paper 2, at 11 ¶ 67).  This allegation, like Plaintiff's special damages allegations, asserts only legal conclusions without reference to actual events, and need not be taken as true on a motion to dismiss.  See *United Black Firefighters*, 604 F.2d at 847.  Plaintiff's allegations do not sufficiently assert the existence of any of the three types of malice identified in *Beane*.

## III.  Final Amended Complaint

Plaintiff also seeks leave of court to file a final amended complaint.  The court's July 18, 2006 Order dismissed Plaintiff's Fair Credit Reporting Act (FCRA) claims, contained in count X of the original complaint, for failure to state a claim because

Plaintiff did not allege that a credit reporting agency had
notified Defendants of the alleged identity theft. (Paper 62, at
2; paper 61, at 23-24). The Order, however, granted Plaintiff
leave to amend to include such an allegation. (Paper 62, at 2).
Plaintiff filed an amended complaint (paper 66) on August 4, 2006,
but the text of count X in the amended complaint remains the same
as the original count X, and does not claim that Defendants were
notified of the alleged identity theft by a credit reporting
agency. Plaintiff noted that the amended complaint was not filed
in the form intended (paper 71, at 2) and requested leave to file
a revised amended complaint. The proposed revised amended
complaint (paper 70), does not include the original count X, nor
does it allege any cause of action under the FCRA. The redline
version of the revised amended complaint (paper 69), however,
continues to include the text of the original count X, without
indicating whether Plaintiff intended to delete or amend that text
in the revised amended complaint. On November 9, 2006, Plaintiff
moved for leave to file a final amended complaint. The proposed
final amended complaint (paper 80), like the revised amended
complaint, fails to mention any claim under the FCRA.

The case was removed from state court because Plaintiff's
original count X asserted a federal question, but it appears that
the proposed final amended complaint would not implicate federal
law. If Plaintiff does not assert a claim under the FCRA, the

court will consider remanding the case to state court pursuant to 28 U.S.C. §§ 1367(c)(3) & 1447(c) which authorize the court to decline subject matter jurisdiction over related state claims when all federal claims have been dismissed. Plaintiff will therefore be directed to clarify her position by filing an amended complaint (clean copy and redline version) clearly delineating whether she intends to pursue a claim under the FCRA.  If there is no federal cause of action, the parties are to show cause within 10 days why the case should not be remanded.

**IV.  Martha Lawson**

Plaintiff was previously directed to show cause why the complaint should not be dismissed as to Martha Lawson, but has not done so.  Thus, if Plaintiff seeks to continue to pursue any claim against Ms. Lawson, she must show cause at the time the amended complaint if filed.

A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

12